32251. GENERAL GMC TRUCKS, INC. v. GENERAL MOTORS CORPORATION, GMC TRUCK & COACH DIVISION.
32252. GENERAL GMC TRUCKS, INC. v. TRADE CITY GMC, INC.

UNDERCOFLER, Presiding Justice.

These suits involve the Motor Vehicle Franchise Practices Act of 1974 (Ga. L. 1974, p. 134; Code Ann. Ch. 84-66) and the Motor Vehicle Farm Machinery Practices Act of 1976 (Ga. L. 1976, p. 1440; Code Ann. Ch. 84-66 (Supp. 1976)). The 1976 Act states the 1974 Act is repealed.

Among other things both of these Acts require a state license before engaging in business as a manufacturer's franchised truck dealer. Whether the license should be issued is determined by a commission established by the Acts.[1]

This litigation arose when General Motors Corporation franchised Trade City GMC, Inc., to sell "series 9500" heavy duty trucks. Trade City is located in Cobb County and previously had been franchised to sell other types of motor vehicles. General GMC Trucks, Inc., objected to the issuance of a license to Trade City to sell heavy duty trucks. General GMC Trucks is located in Fulton County. The franchised territory for heavy duty trucks for both dealers was substantially the same.

General GMC Trucks filed its objection in 1975.

---

[1]The 1974 Act denominated the commission as the Motor Vehicle Commission. Under the 1976 Act it is named the Motor Vehicle Franchise Practices Commission. The 1976 Act provides, "the initial appointments of members to the commission shall be made from the persons who constituted the commission in existence at the effective date of this Chapter." Code Ann. § 84-6604 (a) (Supp. 1976).

Before the commission entered its order the 1974 Act was repealed by the 1976 Act. Thereafter the commission concluded that the 1976 was a substantial re-enactment of the 1974 Act and that in fact the 1974 Act was not repealed. On the merits the commission denied Trade City a license under the provisions of both Acts. Upon appeal the superior court reversed and held certain portions of the 1976 Act unconstitutional. This appeal followed. At the outset we point out that the constitutionality of the entire 1976 Act is not in issue in this appeal but only Code Ann. § 84-6604 (a) (Supp. 1976) dealing with the composition of the commission and Code Ann. § 84-6610 (f) (10) (Supp. 1976) providing certain requirements for the issuance of a franchise dealer's license.

1. *Was the 1974 Act repealed?* The superior court held the 1974 Act was repealed by the 1976 Act and reversed the commission's finding to the contrary. We affirm. Without belaboring the issue our review of the two Acts convinces us that the 1976 Act is not such a substantial re-enactment of the 1974 Act so that it is not effectively repealed. The 1976 Act states it comprehensively revises the motor vehicle dealer franchises law and specifically repeals the 1974 Act. In our opinion it did just that. General GMC Trucks' right to challenge the issuance of a license under the 1974 Act has been extinguished. Furthermore, we can not conceive what vested rights an objector acquires under a licensing statute but we are satisfied that General GMC Trucks has none here. We do, however, recognize that its challenge under the 1976 Act before issuance of a license to Trade City was timely under the circumstances.

2. *Is the composition of the Georgia Franchise Practices Commission unconstitutional?* The trial court held that the commission membership as prescribed by the 1976 Act (Code Ann. § 84-6604 (a) (Supp. 1976)) violates due process because it is not a fair and impartial tribunal. The commission is composed of nine members, five of whom must be franchised dealers. The trial court apparently reasoned that the commission must necessarily be prejudiced in favor of franchised dealers because franchised dealers comprise a majority of the commission. We do not agree and reverse this ruling of the trial court.

The mere fact that a majority of the commission members are franchised dealers is not in itself dispositive of the issue. It is a common and acceptable practice to appoint members of a profession, business or trade to oversee the practices of that group. See generally Title 84. Members of a commission are presumed to be fair and impartial. Withrow v. Larkin, 421 U. S. 35 (95 SC 1456) (1975); United States v. Morgan, 313 U. S. 409 (61 SC 999) (1941). General Motors Corporation and Trade City have failed to overcome that presumption. Therefore, we conclude that the trial court erred in holding that the commission was per se[2] unconstitutional. In so ruling, we are not unmindful of Wall v. American Optometric Association, Inc., 379 FSupp. 175 (ND Ga. 1974) (3-judge court), affd. mem. sub nom. Wall v. Hardwick, 419 U. S. .888 (1974), urged by Trade City and General Motors Corporation. We, however, find that case distinguishable on its facts[3] and thus inapposite here.

3. *Does the 1976 Act burden interstate commerce?* The trial court held that Code Ann. § 84-6610 (f) (10) (Supp. 1976) was unconstitutional under the commerce clause of the U. S. Constitution. We agree. That section provides that the commission may deny a license as a franchised dealer if the manufacturer, "has evidenced his intent to grant an additional franchise for any line-make of motor vehicle, construction equipment or farm machinery, in any community or territory where a franchised dealer of the same line-make of motor vehicle,

---

[2] Rule 215-4-.02 (5) of the Official Rules and Regulations of the State of Georgia provides for the Chairman of the Commission to call for any objections to individual commissioners immediately after the calling of the case, and for the waiver of such a claim if no objection is made.

[3] In Wall, supra, the board, composed of members of one group, was trying to oust one third of the profession by regulating the other, nonmember group, out of business, and thereby directly benefitting the board and its group. See Gibson v. Berryhill, 411 U. S. 564 (93 SC 1689) (1973).

construction equipment or farm machinery is complying with the terms of his franchise or selling agreement unless the manufacturer, distributor, wholesaler, or their branches or representatives can demonstrate that such franchised dealer is not providing adequate representation in the community or territory or that the addition of another dealer can be accomplished without causing a reduction in the business of the existing dealer. . ."

It is axiomatic that a state may not regulate interstate commerce even in the absence of federal legislation unless Congress so consents. Bowman v. Chicago & N. W. R. Co., 125 U. S. 465 (8 SC 689)(1887). The practical effect of this section of the 1976 Act is a limitation on the number of dealers to which General Motors may market its cars for retail sales and thereby creates an undue burden on interstate commerce. U. S. Constitution, Art. I, Par. 8.

There can be no question but that the regulation limiting the available market for General Motors products imposes a burden on interstate commerce. See e.g., Milk Control Board v. Eisenberg Farm Products, 306 U. S. 346 (59 SC 528) (1938); General Motors Corp. v. Blevins, 144 FSupp. 381 (D. Colo., 1956) (3-judge court). However, it is equally clear that "where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U. S. 137, 142 (90 SC 844) (1970).

The state may regulate under the police power where the health, safety and welfare of its citizens are at stake. The United States Supreme Court has recognized the "broad power in the state to protect its inhabitants against perils to health and safety, fraudulent traders and highway hazards, even by use of measures which bear adversely upon interstate commerce." H. P. Hood & Sons v. Du Mond, 336 U. S. 525, 531-532 (69 SC 657) (1949).

The courts of Georgia, however, though broadly construing the police power, have traditionally limited the power of the state to regulate private business. For

example in *Grayson-Robinson Stores v. Oneida, Ltd.*, 209 Ga. 613 (75 SE2d 161) (1953), the Georgia Fair Trade Act (Ga. L. 1937, p. 800), was held to violate the supremacy and commerce clauses as well as due process. A later fair trade Act (Ga. L. 1953, p. 549, Nov.-Dec. Sess.), was also invalidated in *Cox v. General Electric Corp.*, 211 Ga. 286 (85 SE2d 514) (1955). The state's attempt to fix milk prices through a Milk Control Board, under the Milk Control Act (Ga. L. 1937, p. 247; Ga. L. 1952, p. 55), was struck down under the due process clause as restricting the freedom to contract. *Ward v. Big Apple Super Markets*, 223 Ga. 756 (158 SE2d 396) (1967); *Harris v. Duncan*, 208 Ga. 561 (67 SE2d 692) (1951). Similarly, the Unfair Cigarette Sales Act (Ga. L. 1949, p. 695), in *Williams v. Hirsch*, 211 Ga. 534 (87 SE2d 70) (1955), was held unconstitutional. Compare, *City of Calhoun v. North Ga. Elec. Membership Corp.*, 233 Ga. 759 (213 SE2d 596) (1975) (electric membership); *Wilder v. State*, 232 Ga. 404 (207 SE2d 38) (1974) (billiards); *Holcomb v. Johnston*, 213 Ga. 249 (98 SE2d 561) (1957) (dental appliances); *Lamons v. Yarbrough*, 206 Ga. 50 (55 SE2d 551) (1949) (dental hygienists), where the regulations have been upheld as affecting the public interest and thus proper subjects of legislation under the police power.

The section of the Automobile Franchise Practices Act called into constitutional question (Code Ann. § 84-6610 (f) (10) (Supp. 1976)) permits the Franchise Practices Commission to deny, suspend or revoke a license where a manufacturer seeks to grant another franchise in the same community or territory as an existing dealer, who is in compliance with his franchise, unless the manufacturer can show that the dealer is not providing adequate representation or that a new dealer can be added without reducing the existing dealer's business. We view this legislation, like that struck down in the cases set out above, as purely anticompetitive and thus not "affected with the public interest" and within the police power of the state. Hood & Sons v. Du Mond, supra. The legislature may not use its power to protect a special group from competition. See Buck v. Kuykendall, 267 U. S. 307 (45 SC 324) (1924). Accord, 16 AmJur2d 623, Constitutional Law, § 321.

The public purpose to be served is stated in the Act at Code Ann. § 84-6602 (Supp. 1976) (emphasis supplied): "... the distribution and sales of motor vehicles . . . *vitally affects the general economy* of the State and the public interest in the public welfare, and the General Assembly finds in the exercise of its police power, that it is necessary to regulate and to license persons who manufacture, distribute and sell motor vehicles, . . . so as to adequately [sic] assure a sound system of distribution of motor vehicles . . . to the public so as to promote the public health, safety and welfare." We are not, however, bound by the statements of public purpose found in the Acts of the legislature. "We do not think that the recitals contained in the Act amount to finding of fact, but are simply arguments presented by the General Assembly as to the reasons why they [sic] considered the act necessary, and their conclusions as to the effect of the Act." *Cox v. General Electric Co.,* supra, pp. 290-291. It is the role of the judiciary to decide if the legislature has in fact acted within its power. We conclude here, it has not.

The section of the statute here under constitutional attack very clearly burdens interstate commerce for it directly affects an out-of-state manufacturer seeking to market its products in Georgia. In Highland Farms Dairy v. Agnew, 300 U. S. 608 (57 SC 549) (1936), the state of Virginia forced a Virginia milk retailer to acquire a license and sell milk at the regulated prices, but did not seek any sanctions against the retailer's out-of-state distributor, a Washington, D. C., company. The Supreme Court held that the state could regulate the intrastate retail sale of milk but properly refrained from attempting to regulate the interstate transaction. We think the same reasoning is applicable here. Assuming *arguendo* that Georgia could regulate the dealers in the state, it could not control transactions involving out-of-state manufacturers and local dealers. Here Georgia seeks to sanction the out-of-state manufacturer, which it cannot do.

The reasoning of the Nebraska Supreme Court accurately summarizes our view. "It is clear that the state cannot prohibit the ordinary business of buying and selling new or used motor vehicles. It may, however,

regulate a business to promote the health, safety, morals or general welfare of the public. It may also regulate a business, however honest in itself, if it may become a medium of fraud. The state may, to some extent, compel honesty by imposing a license fee, if widespread frauds upon and losses by its people are thereby prevented. The liberty guaranteed to us by the Constitution implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 549, 31 SC 259, 55 LE 328. . .

"We conclude that the legislature has the authority under the police power to regulate the purchase and sale of motor vehicles for the protection and general welfare of the public.

"But the legislature, under the guise of regulation, may not indulge in arbitrary price fixing, the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly." Nelsen v. Tilley, 137 Neb. 327 (289 NW 388, 126 ALR 729) (1939). Accord, Ohio Motor Vehicle Licensing Board v. Memphis Auto Sales, 103 Ohio App. 347 (142 NE2d 268) (1957); Joyner v. Centre Motor Co., Inc., 191 Va. 627 (66 SE2d 469) (1951).

As stated in Dumbauld, The Constitution of the United States (1964), at p. 126, "According to Chief Justice Taney, a state's police power is unlimited in its nature; it is simply the sovereign power to govern men and things within the jurisdiction of a state. Insofar as the constitutional prohibition forbidding deprivation of liberty or property without due process of law is concerned, the police power is indeed extensive and indefinite in its scope. In particular, it may be exercised to promote the economic welfare of the public (or of a particular group in need of relief from hardship or distress). Thus minimum wage laws and price-fixing legislation are now recognized as valid from the standpoint of due process.

"But a sharp distinction must be drawn when the validity of measures enacted by virtue of the police power is being considered under the commerce clause. For purposes of the commerce clause, genuine health, safety,

or other scientifically justifiable regulations are legitimate, and the court will regard their effect upon interstate commerce as remote or incidental. But measures that are only ostensibly related to such objectives, and that really are designed to promote the economic welfare or financial advantage of particular groups or individuals, will be held unconstitutional. This is because such economic legislation in fact amounts to a regulation of commerce, and with respect to interstate commerce the Constitution has conferred upon the federal government, and not the states, the power to make decisions and determine policy with regard to such matters."

"If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." United States v. Women's Sportswear Mfrs. Assn., 336 U. S. 460, 464 (69 SC 714) (1949).

4. Because of our rulings in Divisions 1 through 3, supra, we need not reach the antitrust challenge to Code Ann. § 84-6610 (f) (10) (Supp. 1976) or enumeration of error 7. The trial court properly granted the motions to dismiss.

*Judgment affirmed in part and reversed in part. All the Justices concur. Hall, J., concurs in the judgment only. Hill, J., disqualified.*

ARGUED MAY 10, 1977 — DECIDED JUNE 23, 1977 — REHEARING DENIED JULY 14, 1977.

*Smith, Cohen, Ringel, Kohler & Martin, John A. Blackmon, Kenneth L. Millwood,* for appellant.

*King & Spalding, Byron Attridge, James D. Miller, Frazer F. Hilder, Robert W. Culver, Cohran, Camp & Snipes, H. G. Snipes,* for appellees.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Richard L. Chambers, First Assistant Attorney General, H. Perry Michael, Senior Assistant Attorney General, R. Douglas Lackey, Assistant Attorney General, Redfern, Butler & Morgan, Stephen E. Raville, Gerald L. Baxter, Vaughn, Barksdale & Nation, Clarence R. Vaughn, Robert W.*

*Maddox,* amici curiae.