592 F.2d 219
 AMERICAN MOTORS SALES CORPORATION, a Delaware Corporation,
and Early AMC, Inc., a Virginia Corporation, Appellees,
v.
DIVISION OF MOTOR VEHICLES OF the COMMONWEALTH OF VIRGINIA,
et al., Appellants.
AMERICAN MOTORS SALES CORPORATION, a Delaware Corporation,
and Early AMC, Inc., a Virginia Corporation, Appellees,
v.
VIRGINIA AUTOMOBILE DEALERS ASSOCIATION, Appellant.
 Nos. 78-1135, 78-1136.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 18, 1978.
Decided Feb. 12, 1979.
 
 John Hardin Young, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for Div. of Motor Vehicles.
 David F. Peters, Richmond, Va. (Dale A. Oesterle, Hunton & Williams, Richmond, Va., on brief), for Va. Auto. Dealers Assn.
 John F. Kay, Jr., Richmond, Va. (Lewis T. Stoneburner, Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellees.
 Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Virginia Code § 46.1-547(d) prevents a motor vehicle manufacturer or distributor from granting an additional franchise for a particular line-make of vehicle in a trade area already served by one or more dealers carrying the same line if, after a hearing requested by a dealer selling the same line in the area, the state Commissioner of Motor Vehicles determines that the market will not support all of the dealerships.[1] The Division of Motor Vehicles of the Commonwealth of Virginia and the Virginia Automobile Dealers' Association appeal a judgment enjoining enforcement of this statute and declaring it an unconstitutional burden on interstate commerce.[2] We held this case under advisement pending decision of New Motor Vehicle Board v. Orrin W. Fox Co., --- U.S. ----, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978). In light of that decision and Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), which were unavailable to the district court, we now reverse.
 
 
 2
 * American Motors Sales Corporation, a Delaware corporation with a principal place of business in Michigan, sells both AMC and Jeep vehicles to franchised dealers throughout the United States. Early AMC, Inc., is a franchised AMC and Subaru dealership in Orange, Virginia. P. D. Waugh & Co., an intervening defendant in the district court, is the only Jeep dealer in Orange. The Virginia Automobile Dealers' Association, which also intervened, is a statewide trade association that helped to draft the challenged statute.
 
 
 3
 Jeeps, like most motor vehicles sold in Virginia, come from outside the state. Only Ford and Volvo manufacture in Virginia. Jeeps compete directly with other four-wheel drive vehicles distributed by American's competitors. American recognizes a distinct market for four-wheel drive vehicles and calculates its sales projections for Jeeps with reference to that market. Lost Jeep sales redound to the benefit of the other companies that sell four-wheel drive vehicles.
 
 
 4
 In 1975, American notified Waugh that it intended to grant Early a Jeep franchise at Early's established location about two miles from Waugh's dealership. Since the franchise would permit Early to sell Jeeps in the trade area already served by Waugh, Waugh requested the Virginia Commissioner of Motor Vehicles to conduct a hearing pursuant to Virginia Code § 46.1-547(d) to determine whether the market could support both dealerships. At the hearing, American sought to prove that Waugh was selling far fewer Jeeps then American had projected on the basis of its assessment of demand in the Orange market area. The hearing officer found that Waugh's sales performance had been inadequate and that no reasonable evidence showed the trade area could not support two Jeep dealers. He therefore concluded that the additional franchise should be permitted. The commissioner, however, rejected the hearing officer's conclusion and prohibited American from granting a Jeep franchise to Early.
 
 
 5
 American and Early filed suit in the district court, seeking a declaratory judgment and an injunction against enforcement of § 46.1-547(d) on the grounds that it violated the supremacy, commerce, and due process clauses of the United States Constitution.[3] The defendants argued that the statute was a valid regulation designed to prevent destructive competition among local dealers and unfair trade practices by automobile manufacturers. On cross motions for summary judgment, the court held that the prevention of destructive competition is not a legitimate local purpose under the commerce clause and that the state could prevent unfair trade practices without imposing so great a burden on interstate commerce. The court did not reach the plaintiffs' other constitutional claims, and those claims were not argued in this appeal.[4]
 
 II
 
 6
 Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), enunciates the standard for determining the validity of a state statute challenged under the commerce clause:
 
 
 7
 Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
 
 
 8
 We therefore must decide (1) whether the Virginia automobile franchise statute promotes a legitimate local purpose, (2) whether it treats interstate and intrastate commerce evenhandedly, and (3) whether the burden imposed on interstate commerce appears excessive when balanced against the state's interest. See Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 440-42, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); Great Atlantic & Pacific Tea Co. v. Cottrell, 424 U.S. 366, 371-72, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976).
 
 III
 
 9
 The recent decision in New Motor Vehicle Board v. Orrin W. Fox Co., --- U.S. ----, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978), simplifies our resolution of the first question. There, the Court considered the validity of a California statute similar in many respects to the Virginia statute and the statutes adopted by 15 other states. See 99 S.Ct. at 408 n. 7. Noting the "disparity in bargaining power between automobile manufacturers and their dealers," the Court observed that the franchise regulation "protects the equities of existing dealers by prohibiting automobile manufacturers from adding dealerships to the market areas of its existing franchisees, where the effect of such intra-brand competition would be injurious to the existing franchisees and to the public interest." 99 S.Ct. at 407-08. The Court identified the purpose of such laws as "the promotion of fair dealing and the protection of small business." 99 S.Ct. at 408 n. 7. It then held that the state legislature "was empowered to subordinate the franchise rights of automobile manufacturers to the conflicting rights of their franchisees where necessary to prevent unfair or oppressive trade practices." 99 S.Ct. at 411.
 
 
 10
 The Virginia statute serves the same public interests identified by the Court in Orrin W. Fox Co. Although that case was testing the California law under the due process clause and the Sherman Act, the Court's recognition of the legitimacy of state regulation designed to protect those interests is pertinent to our inquiry here. Consequently, we conclude that the Virginia statute regulating the establishment of new automobile franchises serves a legitimate local purpose.
 
 IV
 
 11
 The Virginia statute draws no distinction between manufacturers that produce cars within the state and those that do not. Therefore, it does not discriminate against interstate commerce. See Breard v. Alexandria, 341 U.S. 622, 633-41, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission, 341 U.S. 329, 336-37, 71 S.Ct. 777, 95 L.Ed. 993 (1951). Since the statute regulates evenhandedly and furthers a legitimate local interest, it satisfies Pike v. Bruce Church's First two requirements for conformity with the commerce clause. It is for these reasons that the Virginia statute is distinguishable from the statutes invalidated in the cases on which the appellees principally rely.[5]
 
 V
 
 12
 Pike v. Bruce Church also requires that a state statute not impose a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174. The appellees argue that the Virginia statute is unconstitutional because it totally obstructs interstate commerce in Jeeps between American and Early. The Supreme Court rejected essentially the same argument in Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).
 
 
 13
 Exxon held that a Maryland statute requiring petroleum refiners to divest themselves of all retail stations within the state did not impermissibly burden interstate commerce. The Court recognized that divestiture might cause some refiners to stop selling gasoline in the state and that the discontinuance of refiner-operated stations might deprive consumers of certain services. Despite these effects, the Court ruled that the statute did not violate the commerce clause. After pointing out that the products of other interstate refiners would probably replace those distributed by the companies withdrawing from the state, the Court explained that "interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another." 98 S.Ct. at 2214. The commerce clause, the Court continued, "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." 98 S.Ct. at 2215.
 
 
 14
 Tested by the principles explained in Exxon, we conclude that the Virginia statute imposes no unconstitutional burden on interstate commerce. The public in the Orange market area may buy as many Jeeps as Waugh can sell. If Waugh does not persuade potential purchasers to buy Jeeps, they can buy competitive vehicles. Conversely, American and its competitors can supply the market with all the four-wheel drive vehicles that it will absorb. The statute may affect the structure of the retail market by shifting business from one out-of-state manufacturer to another. But, when a statute is otherwise valid, the commerce clause does not insulate this aspect of trade from state regulation. Exxon, 98 S.Ct. at 2215.
 
 
 15
 The Virginia statute restricts intrabrand competition between Jeep dealers by excluding Early from the Orange market. But that effect alone does not establish a violation of the commerce clause. In New Motor Vehicle Board v. Orrin W. Fox Co., --- U.S. ----, 99 S.Ct. 403, 412-13, 58 L.Ed.2d 361 (1978), the Supreme Court considered the contention that a similar California statute violated the Sherman Act by facilitating private restraints of trade. The Court first rejected that argument on the ground that the law was a legitimate regulation covered by the state action exemption to the antitrust laws formulated in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Court then went on to say:
 
 
 16
 Appellees also argue conflict with the Sherman Act because the Automobile Franchise Act permits auto dealers to invoke state power for the purpose of restraining intrabrand competition. "This is merely another way of stating that the . . . statute will have an anticompetitive effect. In this sense, there is a conflict between the statute and the central policy of the Sherman Act 'our charter for economic liberty' . . . . Nevertheless, this sort of conflict cannot itself constitute a sufficient reason for invalidating the . . . statute. For if an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed." Exxon v. Governor of Maryland, (437 U.S. 117, 98 S.Ct. 2207, 2218, 57 L.Ed.2d 91 (1978)).
 
 
 17
 The Court's analysis in Orrin W. Fox Co. dealt with the Sherman Act, but the case is relevant to our consideration of the commerce clause. Since the Court found that a statute similar to Virginia's did not foster an illegal restraint of trade, something in addition to such a restraint would have to be shown to establish an unconstitutional burden on interstate commerce. The record, however, discloses no other effect than the restriction of intrabrand competition.
 
 
 18
 Nevertheless, if Virginia's regulation of intrabrand competition were to conflict with a federal law governing interstate commerce, the state statute would be invalid. Relying on this principle, American emphasizes that the legislative history of the federal Dealers' Day in Court Act, 15 U.S.C. §§ 1221-1225, discloses that Congress rejected a provision that would have restricted a manufacturer's power to enfranchise additional dealers in a market area. See H.R.Rep. No. 2850, 84th Cong., 2d Sess., Reprinted in (1956) U.S.Code Cong. & Admin.News, pp. 4596, 4603-04. The federal act, however, does not preempt state legislation for the protection of automobile dealers unless there is a direct, irreconcilable conflict between express provisions of the state and federal laws. 15 U.S.C. § 1225. Here no statutory conflict exists. Congressional reluctance to restrict intrabrand competition demonstrates only a difference of opinion about the wisdom of inhibiting a manufacturer's power to grant dealer franchises; it does not show that state-imposed restrictions are undue burdens on commerce. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 2215, 57 L.Ed.2d 91 (1978). We therefore hold that the Virginia automobile franchising statute does not violate the commerce clause.
 
 VI
 
 19
 The district court did not address other constitutional challenges to the statute, and the parties did not brief them here. Since American and Early have reserved those challenges, we remand the case for the consideration of issues that they now may wish to press in the district court.
 
 
 20
 The judgment of the district court is reversed; the injunction against enforcement of Virginia Code § 46.1-547(d) is dissolved; and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Virginia Code § 46.1-547(d) (Cum.Supp.1978) provides:
 It is unlawful for any manufacturer, factory branch, distributor or distributor branch, or any field representative, officer, agent or any representative whatsoever of any of them:
 (d) To grant an additional franchise for a particular line-make of motor vehicle in a trade area already served by a dealer or dealers in that line-make unless the franchisor has first advised in writing such other dealers in the line-make in the trade area; provided that no such additional franchise may be established in the trade area if the Commissioner has determined, if requested by any party within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will not support all of the dealerships in that line-make in the trade area; provided, further, that a reopening of a franchise in a trade area that has not been in operation for more than one year shall be deemed the establishment of a new franchise subject to the terms of this subsection(.)
 
 
 [2]
 Some state courts have held that similar statutes do not violate the commerce clause. See, e. g., Ford Motor Co. v. Pace, 206 Tenn. 559, 335 S.W.2d 360, 365 (1960); Forest Home Dodge, Inc. v. Karns, 29 Wis.2d 78, 138 N.W.2d 214, 222 (1965). Other courts have invalidated them. See, e. g., General GMC Trucks, Inc. v. General Motors Corp., 239 Ga. 373, 237 S.E.2d 194, 196-98 (1977); Cf. General Motors Corp. v. Blevins, 144 F.Supp. 381, 394-95 (D.Colo.1956). See generally Macaulay, Changing a Continuing Relationship Between a Large Corporation and Those Who Deal With It: Automobile Manufacturers, Their Dealers, and the Legal System, Pt. I, 1965 Wis.L.Rev. 483, 513-26, Pt. II, 1965 Wis.L.Rev. 740, 789-93 (1965)
 
 
 [3]
 American and Early did not claim that the Commissioner of Motor Vehicles' decision was arbitrary, based on insufficient evidence, or invalid for any other similar reasons
 
 
 [4]
 The district court's opinion is reported at 445 F.Supp. 902 (E.D.Va.1978)
 
 
 [5]
 See H. P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949); Buck v. Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925)