CHRYSLER MOTORS CORPORATION, A DELAWARE CORPORATION, APPELLANT, V. LEE JANSSEN MOTOR COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

534 N.W.2d 309

Filed June 30, 1995. No. S-94-895.

Robert D. Kinsey, Jr., and Richard L. Rice, of Kinsey Ridenour Becker & Kistler, for appellant.

Michael K. High, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellee Lee Janssen Motor Co.

Don Stenberg, Attorney General, and Paul N. Potadle for appellees Nebraska Motor Vehicle Industry Licensing Board et al.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and LIKES, D.J.

WRIGHT, J.

Chrysler Motors Corporation (Chrysler) appeals from the Lancaster County District Court's dismissal of its declaratory judgment action, which challenged the constitutionality of certain provisions of the motor vehicle industry licensing statutes. The court found that the hearing provisions of Neb. Rev. Stat. §§ 60-1420 to 60-1435 (Reissue 1993) were not contrary to the due process guarantees of the Nebraska or U.S. Constitution, and dismissed the action.

## SCOPE OF REVIEW

The constitutionality of a statute is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *State v. Popco, Inc.*, 247 Neb. 440, 528 N.W.2d 281 (1995).

## FACTS

Chrysler is a Delaware corporation licensed and doing business in the State of Nebraska as a new motor vehicle manufacturer. Lee Janssen Motor Company (Janssen) is a Nebraska corporation doing business in McCook, Nebraska, as an authorized new car and truck dealer of Chrysler products. The Nebraska Motor Vehicle Industry Licensing Board (Board) is a Nebraska administrative agency created pursuant to Neb. Rev. Stat. §§ 60-1401.01 to 60-1440 (Reissue 1993). At the times relevant to this opinion, the Board was chaired by Alvin Abramson, director of the Department of Motor Vehicles, and included nine other individuals (the members of the Board).

In the early 1970's, Chrysler and Janssen executed and entered into direct dealer agreements for the Chrysler, Plymouth, and Dodge lines. In 1990, restated sales and service agreements for Chrysler vehicles were executed by Chrysler and Janssen to replace the previous direct dealer agreements. The 1990 agreements are the basis for Chrysler's action to terminate the Janssen franchise.

Chrysler named as defendants Janssen, the members of the Board in their official capacities, and the Board as a corporate entity. Chrysler's amended petition for declaratory judgment pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue

1989) alleged, inter alia, that the chairman of the Board, the executive director of the Board, and the members of the Board, "acting in concert with other Board members or individually, pursuant to Neb. Rev. Stat. §§ 60-1420 and 1425, [are] required to perform an act not legally authorized or which exceeds or abuses the authority conferred upon [the Board]." The amended petition refers to a portion of the provisions of § 60-1420, which states: "(1) Except as provided in subsection (2) of this section, no franchisor shall terminate or refuse to continue any franchise unless the franchisor has first established, in a hearing held pursuant to section 60-1425, that: (a) The franchisor has good cause for termination or noncontinuance . . . ."

Chrysler alleged that the right to terminate Janssen's franchise required the exercise of judicial powers in excess of the Board's authority and, as such, the Board was without jurisdiction and authority to resolve the dispute. Chrysler further alleged that § 60-1420, which requires Chrysler to appear before the Board "to obtain the Board's approval prior to termination of a franchise . . . violates the due process rights guaranteed to Chrysler by the Nebraska Constitution, Article I, Section 3." Chrysler asserts that the Board is not a neutral, impartial, and detached decisionmaker and that the compositional bias of the Board violates the due process rights guaranteed to Chrysler by the 14th Amendment to the Constitution of the United States.

Chrysler requested two declarations: first, that the Board is without jurisdiction to determine the parties' rights under the agreements, and second, that the requirements of § 60-1401.01 et seq., specifically § 60-1420 requiring proceedings before the Board prior to termination of a franchise, violate the due process guarantees provided in Neb. Const. art. I, § 3, and the 14th Amendment to the Constitution of the United States. Finally, having attacked the right of the Board to hear termination cases, Chrysler petitioned the district court to declare that Chrysler was entitled to terminate Janssen's dealership franchise.

The members of the Board denied that they had been exercising power "not legally authorized or which exceeds or

abuses the authority conferred" upon the Board. The Board asserted that the court had no jurisdiction because the state had not waived its sovereign immunity with respect to a declaratory judgment. Janssen generally denied Chrysler's allegations and subsequently filed a motion for summary judgment on the constitutional issue. The Board filed a motion for summary judgment on the issue of the Board's sovereign immunity.

On July 13, 1994, the district court, inter alia, made the following findings:

2. On or about January 12, 1993, Chrysler notified Janssen that it was terminating its dealership agreements. Neb. Rev. Stat. § 60–1420 (Cum. Supp. 1992) prohibits the termination of a car dealership franchise unless the manufacturer establishes good cause for the termination at a hearing before the Board. Chrysler claims that the hearing requirement violates the due process guarantees under Article I. Sec. 3 of the Constitution of the State of Nebraska and the Fourteenth Amendment of the United States Constitution.

3. The Motion for Summary Judgment filed by the Board is based on the claim that an action against the Board is, in effect, an action against the state and the state has not waived its sovereign immunity with respect to proceedings under the Declaratory Judgment Act. Since this action challenges the validity of a statute, there is no waiver of sovereign immunity with respect to the Board itself. . . . The Motion for Summary Judgment should be sustained as to the Board itself.

4. Janssen's Motion for Summary Judgment concerns the constitutional issues raised by Chrysler. As noted above, any termination of a franchise requires the manufacturer to first appear before the Board to obtain the Board's approval of such termination. Neb. Rev. Stat. § 60–1420 (Cum. Supp. 1992). Pursuant to Neb. Rev. Stat. § 60–1402 (Reissue 1988), the Board consists of (i) the Director of Motor Vehicles; (ii) one factory representative; (iii) one member of the general public; (iv) one motorcycle dealer; (v) three new motor vehicle dealers; and (vi) two used motor vehicle dealers and one

trailer dealer or a combination motor vehicle or trailer dealer.

5. Chrysler claims that the composition of the Board is constitutionally infirm in that it deprives it of a neutral and detached decision-maker. In support of this argument Chrysler relies upon several decisions from the State of California. . . . Understandably, the composition of the Nebraska board raises a "perception" of nonneutrality. . . .

. . . .

7. Chrysler's concern with the neutrality of the Board is understandable. Nevertheless, in light of the de novo review provided by Section 84-917, the challenged statutory scheme does not violate the due process guarantees of the Nebraska and United States Constitutions. The California decisions are inapplicable.

IT IS ORDERED that the Motion for Summary [Judgment] of the Nebraska Motor Vehicle Licensing Board be sustained as to the Board and that the amended petition be dismissed as to the Board for lack of jurisdiction.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Lee Janssen Motor Company be sustained as to the constitutionality of the hearing requirements of Neb. Rev. Stat. § 60-1420 et seq.; the court finds that such provisions are not contrary to the due process guarantees of the Nebraska or United States Constitutions.

Chrysler's motion for new trial, filed on July 21, 1994, was overruled on August 19. On August 26, Chrysler filed a motion for summary judgment. On September 8, based on the court's decision of July 13, all defendants filed motions to dismiss Chrysler's petition for lack of jurisdiction.

The district court found that the motor vehicle industry licensing statutes provide that dealer terminations shall be conducted before the Board and that the court lacked jurisdiction to hear Chrysler's request to terminate the Janssen franchise. The court sustained the motions to dismiss and overruled Chrysler's motion for summary judgment. Chrysler

timely perfected its appeal to this court.

## ASSIGNMENTS OF ERROR

Chrysler asserts that the district court erred (1) in finding that the dealer termination provisions of chapter 60, article 14, do not violate the due process guarantees of the Nebraska or U.S. Constitution and, thus, finding that the provisions of chapter 60, article 14, are constitutional; (2) in holding that the subsequent de novo review by an appellate court remedies and eliminates due process violations present in Board proceedings wherein the Board sits as fact finder and decisionmaker in manufacturer–dealer disputes; (3) in dismissing the Board as a party to this action for lack of jurisdiction; and (4) in dismissing Chrysler's amended petition for lack of jurisdiction, thereby requiring Chrysler to proceed before the Board to terminate Janssen's franchise.

## ANALYSIS

We address Chrysler's first assignment of error, since it is dispositive of the case. Chrysler did not directly attack the constitutionality of § 60–1402, which establishes the composition of the membership of the Board. By a declaratory judgment action, Chrysler attempted to bypass the requirement of § 60–1420 that "no franchisor shall terminate or refuse to continue any franchise unless the franchisor has first established, in a hearing held pursuant to section 60–1425, that: (a) The franchisor has good cause for termination . . . ." Chrysler sought to avoid the requirement of § 60–1420 by asking the district court to declare that Chrysler was entitled to terminate Chrysler's franchise with Janssen.

Chrysler argues that because of the composition of the Board, the Board is not capable of acting as a neutral and detached decisionmaker in dealer termination proceedings under § 60–1420. Chrysler claims that its due process rights are violated because the Board as composed pursuant to § 60–1402 has an inherent bias favoring automobile dealers versus automobile manufacturers. Chrysler contends that such bias, when coupled with the statutory requirement that a manufacturer must appear before the Board to show "good cause" for termination of a dealership, denies Chrysler its

constitutionally protected right to an impartial decisionmaker.

The composition of the Board is established by § 60–1402, which provides:

> (1) There is hereby established the Nebraska Motor Vehicle Industry Licensing Board which shall consist of the Director of Motor Vehicles, who shall be chairman of the board, and nine members appointed by the Governor as follows: One factory representative, one member of the general public, and one motorcycle dealer . . . one new motor vehicle dealer from each of the three congressional districts of the state . . . and two used motor vehicle dealers and one trailer dealer or combination motor vehicle or trailer dealer . . . *Provided,* that no member of the board shall participate in any manner in a proceeding before the board involving his licensed business.

It is this composition of the Board that Chrysler claims establishes the inherent bias of the Board.

Certain propositions of law govern our determination of the issue before us. The constitutionality of a statute or ordinance is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *Boll v. Department of Revenue,* 247 Neb. 473, 528 N.W.2d 300 (1995); *State v. Popco, Inc.,* 247 Neb. 440, 528 N.W.2d 281 (1995); *Wagoner v. Central Platte Nat. Resources Dist.,* 247 Neb. 233, 526 N.W.2d 422 (1995). The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *City of Ralston v. Balka,* 247 Neb. 773, 530 N.W.2d 594 (1995); *Pick v. Nelson,* 247 Neb. 487, 528 N.W.2d 309 (1995); *Hlava v. Nelson,* 247 Neb. 482, 528 N.W.2d 306 (1995).

A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *City of Ralston v. Balka, supra; Hlava v. Nelson, supra; Boll v. Department of Revenue, supra.* Unconstitutionality must be clearly established before a statute will be declared void. *Hlava v. Nelson, supra; Slack Nsg. Home v. Department of Soc. Servs.,* 247 Neb. 452, 528 N.W.2d 285 (1995).

In the case at bar, Chrysler has the burden of clearly establishing that § 60–1420 is unconstitutional. Chrysler relies

upon the following cases: *American Motors Sales Corp. v. New Motor Vehicle Bd.*, 69 Cal. App. 3d 983, 138 Cal. Rptr. 594 (1977); *Chevrolet Motor Div. v. New Motor Veh. Bd.*, 146 Cal. App. 3d 533, 194 Cal. Rptr. 270 (1983); *Nissan Motor Corp. v. New Motor Vehicle Bd.*, 153 Cal. App. 3d 109, 202 Cal. Rptr. 1 (1984); and *University Ford etc. v. New Motor Vehicle Bd.*, 179 Cal. App. 3d 796, 224 Cal. Rptr. 908 (1986). In each case, the court held that the membership of several car dealers on the motor vehicle board deprived a manufacturer litigant of due process because the board was not impartial.

In *American Motors Sales Corp.*, the manufacturer attempted to terminate a dealership for failure to develop a sufficient sales volume. Following a hearing, the hearing officer found "good cause" for termination. The New Motor Vehicle Board disagreed. On appeal, the superior court held that sections of the California Vehicle Code violated due process under the state and federal Constitutions. The vehicle code mandated that the board must include four dealers but need not include any manufacturers.

The California Court of Appeal affirmed and held that dealer members of the board had an economic stake in every franchise termination before the board and that it was to every dealer's advantage not to permit termination for low sales performance. The Court of Appeal stated that a new–car dealer was not per se biased to a degree that he could not or should not under any circumstances serve on the board, but the combination of the mandated dealer board members, the lack of any counterbalance in mandated manufacturer members, the nature of the adversaries, and the nature of the controversy did not furnish an impartial tribunal. The court concluded that the objectionable feature of dealer membership on the board was the distinct possibility that a dealer–manufacturer controversy would be decided not on its merits but on the potential interest of the dealer members. "Because the challenged Board members have a 'substantial pecuniary interest' in franchise termination cases . . . their *mandated* presence on the Board potentially prevented a fair and unbiased examination of the issues before it in this case, in violation of due process." *American Motors Sales Corp.*, 69 Cal. App. 3d at 992, 138 Cal. Rptr. at 599.

The court in *Chevrolet Motor Div. v. New Motor Veh. Bd.,* *supra,* similarly concluded that dealer members were biased and that their presence on the board resulted in a substantial probability that decisions in dealer–manufacturer disputes would be made on the basis of inappropriate considerations. *Nissan Motor Corp. v. New Motor Vehicle Bd., supra,* reaffirmed the decisions discussed above. *University Ford etc. v. New Motor Vehicle Bd., supra,* held that the board, composed of the dealers and members of the public, was not an impartial forum for resolving dealer–manufacturer disputes and that the constitutional defect could not be remedied by voluntary recusal of the board's dealer members. Following these decisions, the California Legislature amended the vehicle code to expressly prohibit all dealer members from participating in or discussing any disputes before the board between a dealer and a manufacturer. *British Motor Car D. v. New Motor Veh. Bd.,* 194 Cal. App. 3d 81, 239 Cal. Rptr. 280 (1987).

The California cases were premised upon the assumption that dealer members of the board always have an economic stake in every franchise termination before the board. This assumption prefaced the conclusion that the mandated presence of dealer members potentially prevented a fair and impartial tribunal.

Chrysler argues that the California courts' rationale as to the impermissibility of dealer board members determining dealer–manufacturer disputes is equally applicable to Nebraska. We decline to adopt the premise that a dealer member always has a pecuniary interest in every franchise termination case. The dissent in *American Motors Sales Corp.* points out that "[i]t is sheer speculation to conclude, absent a finding of actual bias, that a dealer–member has a pecuniary interest antagonistic to the manufacturer . . . ." 69 Cal. App. 3d at 994, 138 Cal. Rptr. at 600.

In *Gen. GMC Trucks v. Gen. Motors Corp.,* 239 Ga. 373, 237 S.E.2d 194 (1977), *cert. denied* 434 U.S. 996, 98 S. Ct. 634, 54 L. Ed. 2d 491, the Supreme Court of Georgia rejected the trial court's holding that a commission consisting of nine members, of whom five are franchised dealers, must necessarily be prejudiced. The court recognized that it was common and acceptable practice to appoint members of a profession or

business to oversee the practices of that group. "Members of a commission are presumed to be fair and impartial." *Gen. GMC Trucks*, 239 Ga. at 375, 237 S.E.2d at 195.

A similar result was reached in *General Motors Corp. v. Capitol Chevrolet*, 645 S.W.2d 230 (Tenn. 1983). Commencing with an administrative proceeding before the Tennessee Motor Vehicle Commission, General Motors applied for permission to open a new dealership in a part of the metropolitan Nashville trade area. The commission unanimously denied the application. General Motors appealed via the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-117 (1979). On appeal, the chancellor of the equity court held the statute unconstitutional because the commission as constituted did not provide a fair and impartial tribunal. The chancellor concluded that each dealer member would inevitably have a substantial pecuniary interest in a matter involving a dispute with a manufacturer. At the time of the hearing involved, the commission was composed of nine dealer members and two consumer members.

The Supreme Court of Tennessee stated that it was unable to accept the premise that no automobile dealer could serve fairly on the commission. Only by innuendo and suggestion had there been any hint of bias or partiality. The court stated that the record did not justify striking down the commission as being unconstitutionally composed or biased as a matter of law. The court specifically noted: "The 'realities' of the situation are that the manufacturer is dominant in every respect over the dealers. It was partly because of this obvious disparity in economic power with its potential—and, historically, actual—abuses that statutes such as those in question were enacted." *General Motors Corp.*, 645 S.W.2d at 237.

In reversing the lower court's decision, the court recognized that only those members of the commission with substantial pecuniary interests in the proceedings should be disqualified, citing *Gibson v. Berryhill*, 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). The court stated that similar statutes regulating the automobile business have been enacted in all but a few states and have boards generally composed of motor vehicle dealer members and members of the public who

represent consumer interests. The court noted that the only contrary decision was *American Motors Sales Corp. v. New Motor Vehicle Bd.*, 69 Cal. App. 3d 983, 138 Cal. Rptr. 594 (1977), which the court found was not binding. We adopt the reasoning of the courts in *Gen. GMC Trucks v. Gen. Motors Corp., supra*, and *General Motors Corp. v. Capitol Chevrolet, supra*, and find that the membership of the Board is not inherently biased because some of the members are dealers.

The legislative history of 1971 Neb. Laws, L.B. 768, clearly delineates the purposes for creating the Board. Senator Herbert J. Duis, the introducer of L.B. 768, stated the following:

> The intent of LB. 768 is to re-codify the existing Motor Vehicle Dealers' Licensing Act and to up-grade the sales and service of motor vehicles, motorcycles, and trailers by those licensed under the Act. To a large extent, a franchise system is established between the manufacturers of these vehicles and their dealers and the sales and servicing of the vehicles after sales includes more than the mere transfer of title and is a continuing obligation of all the persons involved in the sale, including the manufacturer, the selling dealer and the buying public. The termination or non-continuation of this franchise relationship without good cause results in the general buying public being denied the availability of continuing mechanical and operational services after the sale and precludes the continued availability of these services which are necessary to serve the public of this state and also to assure the safer operating condition of the vehicle.

Statement of Purpose, L.B. 768, Committee on Public Works, 82d Leg., 1st Sess. (Feb. 18, 1971).

The reason for the enactment of such laws was discussed in *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 99 S. Ct. 403, 58 L. Ed. 2d 361 (1978). The Court recognized the disparity in bargaining power between automobile manufacturers and their dealers, which prompted Congress and 25 states to enact legislation to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers. In *Orrin W. Fox Co.*, California's Automobile Franchise Act, via the California Vehicle Code, explicitly

conditioned a motor vehicle manufacturer's right to terminate a dealership upon compliance with the procedural requirements enacted in the Automobile Franchise Act and, if necessary, upon approval of the New Motor Vehicle Board. The Court noted that California's legislature was constitutionally empowered to enact a general scheme of business regulation that imposed reasonable restrictions upon the exercise of the right to franchise. Citing *Ferguson v. Skrupa*, 372 U.S. 726, 83 S. Ct. 1028, 10 L. Ed. 2d 93 (1963), the Court pointed out that " '[l]egislative bodies have broad scope to experiment with economic problems . . . .' " *Orrin W. Fox Co.*, 439 U.S. at 107.

From our reading of *Orrin W. Fox Co.* and the legislative history in Nebraska, we find that the authority to regulate the franchise rights of automobile manufacturers and dealers in Nebraska is clearly within the power of the Legislature. It is within the authority of the Legislature to require that termination proceedings involving franchises be heard and determined by the Board. See §§ 60–1420 and 60–1425. "States may . . . require businesses to secure regulatory approval before engaging in specified practices." (Emphasis omitted.) *Orrin W. Fox Co.*, 439 U.S. at 108.

In this case, Chrysler has indirectly attacked the requirements of §§ 60–1420 and 60–1425 by alleging a violation of due process because "the Board is not capable of acting as a 'neutral and detached decision–maker' in the statutorily mandated dealership termination proceedings [Neb. Rev. Stat. § 60–1420 (Supp. 1992) et seq.] . . . ." Brief for appellant at 10. It is Chrysler's burden to establish the unconstitutionality of the statutes in question. See *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). It has not met that burden.

Having concluded that the composition of the Board is not inherently biased, we examine the evidence presented by Chrysler in support of its constitutional challenge. Chrysler offered affidavits of two Chrysler employees and the legislative histories of 1957 Neb. Laws, ch. 280, §§ 1 to 18, pp. 1011–24, and 1971 Neb. Laws, L.B. 768.

The affidavit of William S. Hurst, an employee of Chrysler for more than 18 years, stated that as Chrysler's National Dealer Placement Manager, he is familiar with numerous

disputes and legal proceedings by dealers against Chrysler. The disputes involve disagreements over various aspects of dealer–manufacturer relationships, including dealer termination matters. Hurst stated that many of the disputes are the result of conflicting economic interests of the motor vehicle dealer and Chrysler. He stated that state–created dealer franchise boards frequently take positions which conflict with or are adverse to the positions taken by a manufacturer.

The affidavit of Robert M. Williams, the director of National Dealer Relations for Chrysler, stated that his responsibilities include resolving disagreements between dealers and Chrysler, including disputes in the areas of marketing, warranty reimbursement, warranty and sales incentive audits, product offerings, and dealer contractual obligations. Williams stated that such disputes are not always resolved, and as a result, dealers may choose to litigate the dispute.

This evidence and our review of the legislative histories do not establish that the makeup of the Board is biased. Chrysler has offered no evidence of a direct, personal, substantial, or pecuniary interest of any member of the Board, nor do the affidavits imply that the members of the Board are themselves biased. In *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973), the Court held that only those "with substantial pecuniary interest in legal proceedings" should be disqualified. No substantial pecuniary interest of the members of the Board has been demonstrated in the present case.

Of the 50 states, 48 states now have legislation dealing with motor vehicle franchises. The need for this legislation is based upon public policy, public interest, and public welfare. Nebraska has determined that matters involving the distribution and sale of motor vehicles vitally affect the general economy of the state, the public interest, the public welfare, and public safety, and that distribution and sales under the franchise system require the exercise of the state's police power "to insure the public welfare, to regulate commerce, to establish guidelines for enforcement of a fair and equitable balance between parties to such franchises, and to provide judicial relief from unfair and inequitable practices affecting the public interest." § 60–1401.01.

Based on our review of Chrysler's arguments in relation to the legislative intent, the existing statutes as applied to Chrysler, and the evidence, we conclude that Chrysler has failed to sustain its burden of establishing that the composition of the Board pursuant to § 60–1402 is biased or that § 60–1420 as applied to Chrysler violates the Constitution of the State of Nebraska or the 14th Amendment to the Constitution of the United States.

Since we have concluded that §§ 60–1402 and 60–1420 are constitutional, we do not address Chrysler's other assignments of error. As previously noted, the means by which a dealership can be terminated are found solely in § 60–1420. Chrysler did not utilize the statutory procedures. Consequently, the district court was correct in dismissing Chrysler's petition. The judgment of the district court is affirmed.

AFFIRMED.