NEBRASKA LOAN & BUILDING ASSOCIATION, APPELLANT, v. SARAH V. PERKINS ET AL., APPELLEES.

FILED FEBRUARY 6, 1901. No. 9,342.

1. **Constitutional Law:** LEGISLATIVE BILL: COMPREHENSIVE TITLES: SURREPTITIOUS LEGISLATION. The purpose of section 19, article 2, constitution of 1866, which declares that "No bill shall contain more than one subject, which shall be clearly expressed in its title," was not to prohibit comprehensive titles, but rather to prevent surreptitious legislation, and to obviate the evils following from the practice of including in one bill more than a single subject in nowise related to one another.

2. **Title:** ABSTRACT OF BILL. Where a title indicates the subject of proposed legislation, the essential requirements of the constitution are met, although such title is not a complete abstract of the bill.

3. **Legislative Act:** TITLE. The title to an act of the legislature of 1873, entitled "An act to enable associations of persons for raising funds to be loaned among their members for building them homesteads and other purposes, to become bodies corporate," with sufficient clearness indicates the subject of legislation.

4. **Act Complete in Itself.** Said act of 1873 is complete in itself, and embraces a single subject of legislation.

5. **Statute Complete Not Repugnant to Constitution.** A statute complete in itself is, not repugnant to the constitution, though it may conflict with some other statute.

6. **Legislature Can Not Interpret Law.** The legislature may not prescribe what construction the courts shall place upon a law. The interpretation of statutes is for the judiciary.

APPEAL from the district court for Douglas county. Heard below before KEYSOR, J. *Reversed.*

*Kennedy & Learned,* for appellant.

*Howard B. Smith, contra.*

NORVAL, C. J.

Suit was commenced in the district court for Douglas county by the Nebraska Loan & Building Association against Sarah E. Perkins and Cyrus V. Perkins to foreclose a certain mortgage given by the latter to the former, also to cancel certain shares of the stock of said association pledged by said Sarah E. Perkins as security for the payment of the same debt. On trial, a decree was rendered in favor of defendants, the court having found that the debt was fully paid. Plaintiff was a building and loan association, organized under the laws of 1873, chapter 11, page 207, General Statutes, 1873, entitled "An act to enable associations of persons for raising funds to be loaned among their members for building them homesteads and other purposes, to become bodies-corporate." The contract in question was entered into prior to the amendment of said law in 1891. The court below could not have found that said debt was paid unless the contract was tainted with usury, and it could not have been usurious unless the act of 1873 was unconstitutional; and that it is unconstitutional is the contention of counsel for defendants, who insist in their brief that the act is void for the following alleged reasons:

1. That it contains more than one subject, and its subjects are not clearly expressed in its title.

2. That said act, in effect, amends the general interest law, also the general corporation law of the state, without containing the sections so amended, and without repealing the same.

3. Because a portion of the act has been by this court held void, and it is claimed such portion was a material inducement to the legislature to pass the act as a whole.

4. Because that portion of the act which provides that although the dues, fines, premiums and other charges paid by members may aggregate a greater amount than the legal rate of interest, on loans made them, such payments shall not be construed to make such transactions usurious, is an attempt on the part of the legislature to usurp the powers of the courts, and therefore void.

These objections we will examine and discuss in their order. If any one of them is tenable, the lower court was right in rendering the decree it did; if none of them can be sustained, the decree must be reversed.

The evils which the framers of the constitution of 1866 sought by section 19, article 2 thereof, to obviate were surreptitious legislation, and a then common practice of including in one bill various subjects in nowise related to one another, by means of which a sufficient number of votes could be mustered to the support of provisions which, if entertained on their individual merits, would fail of passage. It was not intended thereby to prohibit comprehensive titles. *State v. Stuht*, 52 Nebr., 209; *Paxton & Hershey Irrigating Canal & Land Co. v. Farmers & Merchants Irrigation & Land Co.*, 45 Nebr., 884; *State v. Bemis*, 45 Nebr., 724; *Van Horn v. State*, 46 Nebr., 62. *Boggs v. Washington County*, 10 Nebr., 297. If each piece of legislation must be confined to a single subject, it is evident that, so far as that one bill is concerned, there is little opportunity for trading votes on one portion in order to secure votes on some other—certainly much less than under the old custom, which permitted the inclusion in a bill of any number of subjects, regardless of their relations or congruity. If the title must clearly express

the subject, the smuggling into a bill legislation inimical to public welfare is rendered more difficult, for a legislator or citizen who reads the title of a pending bill is apprised of the subject of legislation, although not necessarily of the specific contents of the bill, and thus put upon inquiry as to its contents. It is not essential that the title chosen by the legislature be the most appropriate; if it indicates the scope and purpose of the act, it is sufficient. *State v. Bemis, ubi supra; In re White,* 33 Nebr., 812. Neither is it necessary that the title inform its readers of the specific contents of the bill. If it indicates the subject of the proposed legislation, it meets all essential requirements. It needs not that it be a complete abstract and epitome of the contents of the bill. If no portion of the bill is foreign to the subject of legislation, as indicated by the title, however general the latter may be, it is in harmony with the constitutional mandate. *Boggs v. Washington County, ubi supra; Hopkins v. Scott,* 38 Nebr., 661; *State v. Moore,* 48 Nebr., 870. It is to be presumed that both legislators and citizens generally are familiar with the institutions sought to be encouraged by the legislation here attacked, and more or less so with the methods by them employed in attaining their objects. Any person reading the title of this act would infer that the object of the bill was to encourage the multiplication of these concerns, that shareholders might, through their instrumentality, secure themselves homes. He would further infer that the bill would disclose the usual provisions relative to organizations of that class. He would expect to find provisions relative to the manner in which money was to be obtained, the conditions upon which its use might be secured by those desiring it, the consideration exacted for such use, and all such matters as are usual to institutions of that nature. Everyone knows that, in order to obtain money for any purpose, some inducement must be offered those who have it by those who have it not. This inducement usually takes the form of interest. It is as much to be ex-

21

pected that in·such legislation provisions regarding in-
terest will exist, as that there will be found prescribed·
the rules and conditions for admission of members.   If
regulations concerning interest are to be anticipated,
regulations concerning the rate of interest could scarcely
be called surreptitious.   Nor would it be a matter of sur-
prise if the reader of such a title should, on a more par-
ticular examination of the bill, find therein the liabilities
of stockholders defined, or the exception of such con-
tracts as it makes with borrowers from the general usury
laws, or provisions relative to assessments, dues, fines,
premiums and forfeitures, for these subjects are all of
the very essence of institutions of this character.   Without
them, there could exist no organizations of that character.
To hold that these subjects are not within the title would
strip the act down to the bare wording of the title itself,
which would merely enable certain persons to incor-
porate, a right they already had under General Statutes,
1873, chapter 11, section 123, under which corporations
may be formed for any lawful purpose; and this would
be convicting the legislature of frivolousness.   The con-
stitutional provision under consideration does not tend
to unnecessarily restrict legislation; it does not compel
the division of laws into separate acts, each covering
merely a minute subdivision of what would, if properly
connected, constitute a systematically arranged whole,
though the unconnected parts of the whole might be
many.   A construction of the fundamental law that
would require the separation of logically or naturally
connected parts from each other, and their separate en-
actment, would render valid legislation almost impossi-
ble.   The purpose of the fundamental law is subserved
when the objects for its existence are attained, when
there is a natural connection between the various parts
of an act, and nothing foreign to the title is hidden
therein. This we think the act in question accomplishes.

Another phase of the same question may be discussed
in this connection.   It will be noted that the title of the

act provides for the organization of associations for the purpose of "raising funds to be loaned among their members for building them homesteads." Section 1 of the act provides that these shall be organized "for the purpose of raising moneys to be loaned among the members, * *. * for use in buying lots or houses, or in building. or repairing or removing incumbrances from houses," etc., and it is argued that this portion of the act is much broader than the title, and for that reason violates the constitutional mandate. Doubtless a legislature may make the title to an act as restrictive as it pleases, and may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in the one enactment, had the title chosen not been too much narrowed. Cooley, Constitutional Limitations [6th ed.], 178. But a reasonable interpretation of this act will scarce comport with the argument of counsel to the effect that the title is too restrictive. While the word "build" is employed in the title, we doubt not it was employed in the sense of obtain, secure or acquire. The object sought was the obtaining of a home for the family, and the method of obtaining it, whether by purchase, by borrowing money from the association with which to buy a tract of land and thereon erect a home, or to repair, or remove incumbrances from, a home already purchased would be immaterial. We are, therefore, of opinion that the title does not restrict members to the single method of building a home but that all the means set out in section 1 are legitimate, and within the meaning and intent of the title.

The second objection is also untenable. The act in question is complete in itself, and could not, therefore, be repugnant to the constitution, though it might conflict with, or be repugnant to, some other statute. *State v. Moore, supra; Van Horn v. State, supra; Bryant v. Dakota County,* 53 Nebr., 755; *Smith v. State,* 34 Nebr., 689. Whether it does or does not conflict with the general usury laws, or those concerning corporations, is imma-

terial, for the reason just stated. Nor is the fact that it refers to another law, making it requisite to follow the requirements of the latter in forming these corporations, a reason why this rule should not prevail. This does not constitute the act so uncertain as to render it difficult to ascertain just what the law is intended to be. The object of the constitution in requiring the portion of the law amended to be included in the new legislation is to preclude the amendment of laws in so blind a manner as to render it difficult to ascertain just what law is intended to be amended. Cooley, Constitutional Limitations, 181. The act has none of the elements of an amendatory statute; it is distinctly legislation upon a new subject, and relative to such subject is complete, although some of its provisions may in effect modify other statutes. A building is an independent entity, although it may be composed of materials similar in form and substance to those contained in thousands of neighboring structures, and though it may exclude the light from and in many ways modify the appearance and use of these others. So a statute is not necessarily amendatory of another because of the fact that in its operation and effect it may widen or narrow the scope of some other act. In the case of *Lincoln Building & Saving Ass'n v. Graham*, 7 Nebr., 173, this court held certain portions of this act void, because it appeared that there was an attempt therein to give to those portions a retroactive operation, and in that manner validate contracts executed before the passage of the act, but which were void from their inception. It is evident that the portions referred to are not an essential part of the law now being considered; they have no relation whatever to future associations, or to their operations. To separate them from the body of the act in no way affects the operation or scope of the law, so far as relates to the organization of these associations, and the act is as complete, and as readily carried out, without as with those portions. *State v. Stuht, supra; State v. Moore, supra.* There is no convincing force in the argu-

ment that provisions relating solely to contracts made prior to the passage of the act in question could have been an inducement to its passage. The legislature was interested in enacting a law making it possible for the incorporation of these concerns, rather than in validating contracts which had never been made by them. *State v. Stuht, ubi supra.* It is not within the province of the legislature to interpret the law, or to apply it to particular cases, that being peculiarly the duty of the courts. But we do not think that the legislature, in reciting that the contracts of these associations should not be construed to be usurious, intended to usurp judicial functions. While the wording of the statute would bear the construction that it was a direction to the courts, yet the substance of the legislation must be regarded, rather than the form, and for that reason we are of opinion that it was rather the intention of the legislature to establish a rule of interest relative to this particular class of contracts; that the act is declaratory, the intent thereby being to relieve the contracts of these institutions from the operation of the usury laws, rather than an attempt to arrogate to the legislature judicial functions. Cooley, Constitutional Limitations, 113.

For the reasons given, it is the conclusion of the court that the act in question does not violate any of the constitutional limitations referred to in the brief of counsel; for which reason the judgment of the lower court must be reversed and the case remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.