STATE OF NEBRASKA EX REL. RONALD SHEPHERD, APPELLEE,
v. NEBRASKA EQUAL OPPORTUNITY COMMISSION ET AL.,
APPELLANTS.
STATE OF NEBRASKA EX REL. RANDALL CHAPP, APPELLEE,
v. NEBRASKA EQUAL OPPORTUNITY COMMISSION ET AL.,
APPELLANTS.
557 N.W.2d 684

Filed January 17, 1997.    Nos. S-95-984, S-95-985.

Don Stenberg, Attorney General, Alfonza Whitaker, and Charles Lowe for appellants.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellees.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and REAGAN, D.J.

CONNOLLY, J.

This consolidated appeal from the district court for Lancaster County arises out of the district court's issuance of peremptory writs of mandamus that ordered the Nebraska Equal Opportunity Commission (NEOC) to return Ronald Shepherd and Randall Chapp (appellees) to their previously held positions of employment with the NEOC. In this appeal, we are asked to determine the constitutionality of Neb. Rev. Stat. §§ 81-2706 and 81-2707(1) (Reissue 1994) of the State Government Effectiveness Act.

We conclude that § 81-2707(1) is unconstitutional because it permits an officer of the legislative branch of state government to encroach upon the prerogatives and duties of the executive branch in violation of the separation of powers clause of article II, § 1, of the Nebraska Constitution. As a result, we reverse the district court's orders issuing peremptory writs of mandamus, without reaching the constitutionality of § 81-2706.

## I. BACKGROUND

In March 1995, the appellees were fired from their employment as full-time investigators with the NEOC pursuant to disciplinary charges brought against them. As a result, they filed charges with the Public Counsel (Ombudsman), claiming that they had been wrongfully fired by the NEOC in retaliation for having cooperated with a legislative investigation of possible NEOC wrongdoing. The appellees assert that their cooperation in the investigation constituted protected whistleblower activity under the State Government Effectiveness Act (Whistleblower Act), Neb. Rev. Stat. §§ 81-2701 through 81-2710 (Reissue 1994 & Cum. Supp. 1996).

The Whistleblower Act was enacted by the Legislature in order to "encourage public officials and employees to disclose information concerning possible violations of law and fiscal waste or mismanagement in state government to elected state officials or the [Ombudsman] and to prohibit reprisals for such disclosures by state employees." § 81-2702.

As required by § 81-2706(1) of the Whistleblower Act, the Ombudsman conducted an investigation and found there existed reasonable grounds to believe that the appellees were fired for engaging in protected whistleblower activity. The Ombudsman, as required by § 81-2706(4), then issued his findings to the State Personnel Board. The State Personnel Board, without any further proceedings, then ordered the NEOC to reverse the firings and to reinstate the appellees to their previously held positions of employment until an official hearing could be held pursuant to § 81-2707(1).

The NEOC refused to comply with these orders. As a result, the appellees commenced this action in the district court, which issued peremptory writs of mandamus ordering the NEOC to

reinstate the appellees to their positions. The NEOC appeals, and the two appeals have been consolidated for purposes of briefing and argument.

## II. ASSIGNMENTS OF ERROR

Summarized and rephrased, the NEOC alleges the district court erred in entering peremptory writs of mandamus because §§ 81-2706 and 81-2707(1) of the Whistleblower Act are unconstitutional, in violation of the separation of powers clause of Neb. Const. art. II, § 1.

We note that §§ 81-2706 and 81-2707 were amended effective September 9, 1995. See §§ 81-2706 and 81-2707 (Cum. Supp. 1996). The amended versions did not go into effect until after the Ombudsman and the State Personnel Board acted under, and the district court applied, §§ 81-2706 and 81-2707 (Reissue 1994) in the instant case. The amendments do not affect any issue pertinent to these appeals. Thus, these appeals will be decided under §§ 81-2706 and 81-2707 (Reissue 1994).

## III. STANDARD OF REVIEW

The party claiming a statute is unconstitutional has the burden to show and clearly demonstrate that the questioned statute is unconstitutional. *Callan v. Balka*, 248 Neb. 469, 536 N.W.2d 47 (1995).

A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Chrysler Motors Corp. v. Lee Janssen Motor Co.*, 248 Neb. 322, 534 N.W.2d 309 (1995); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995).

Even when a law is constitutionally suspect, a court will attempt to interpret it in a manner consistent with the Constitution. *CenTra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

## IV. ANALYSIS

### 1. WHETHER CASE IS MOOT

As a result of a grievance procedure contained in the state's union contract with the Nebraska Association of Public

Employees/AFSCME, an arbitrator has ordered that the appellees be reinstated to employment with the NEOC. Thus, a preliminary issue presented is whether the arbitration order rendered the appeal before this court moot.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994). The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, desirability of an authoritative adjudication for further guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994).

In the instant appeal, the State continues to have a legally cognizable interest in the constitutionality of the Whistleblower Act despite the arbitration order. Furthermore, there is a public desire for an authoritative adjudication to guide public officials (Ombudsman, personnel board) in the performance of their duties. Moreover, there is a likelihood that this same constitutional problem will reoccur in the future yet evade review if we find the issue to be moot. As a result, we will proceed with the merits of this appeal.

## 2. WHETHER CONSTITUTIONALITY OF STATUTES WAS PROPERLY RAISED

Before reaching the NEOC's separation of powers argument, we must first address the appellees' claim that the NEOC did not properly raise the constitutional issue at the district court level. Except in the "most unusual cases," for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court. If not so raised, it will be considered to have been waived. See, *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *In re Estate of Snyder*, 217 Neb. 356, 348 N.W.2d 136 (1984).

The NEOC does not argue that it raised the separation of powers issue in the district court. However, the NEOC argues that it did not have an opportunity to raise the issue in the dis-

trict court because of the nature of peremptory writs of mandamus. A discussion of the types of mandamus writs will be helpful to understand this argument.

Two types of writs of mandamus are recognized and defined: (1) alternative writs and (2) peremptory writs. Neb. Rev. Stat. § 25-2158 (Reissue 1995). The basic difference between these two types of writs is that alternative writs require the defendant be given an opportunity to "show cause why he [or she] has not done as commanded," whereas peremptory writs are generally issued in an ex parte fashion and do not require notice or that the defendant be given an opportunity to "show cause why he [or she] has not done as commanded." § 25-2158. See Neb. Rev. Stat. § 25-2160 (Reissue 1995). "When the right to require the performance of the act is clear and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance. In all other cases, the alternative writ must be first issued . . . ." Neb. Rev. Stat. § 25-2159 (Reissue 1995).

In the instant case, the district court, as permitted by statute, issued the peremptory writs without first issuing alternative writs. Furthermore, the court issued the peremptory writs in an ex parte fashion without providing the NEOC notice or an opportunity to show cause why the writs should not be issued. Moreover, no other pleadings or written allegations are allowed by law. See Neb. Rev. Stat. § 25-2164 (Reissue 1995). Thus, the NEOC correctly asserts that it did not have an opportunity to raise the separation of powers argument at the district court level.

We determine that a defendant must be given an opportunity to raise nonfrivolous, constitutional challenges to the issuance of peremptory writs of mandamus. Our standard when reviewing the alleged unconstitutionality of a statute is that it presents a question of law that must be determined independently from the conclusion reached by the trial court. *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995). As a result, we conclude that this case need not be remanded to the district court, because it is one of those "most unusual cases" in which a question of constitutionality has not been waived and will be considered on

appeal although it was not raised in the district court. See, *In re Estate of Snyder, supra*; *State v. Huebner, supra.*

### 3. WHETHER STATUTES ARE VIOLATIVE OF SEPARATION OF POWERS CLAUSE OF NEBRASKA CONSTITUTION

(a) Overview of Whistleblower Act

The NEOC asserts that § 81-2707(1) of the Whistleblower Act is unconstitutional because it permits an officer of the legislative branch of state government to encroach upon the prerogatives and duties of the executive branch, in violation of the separation of powers clause of Neb. Const. art. II, § 1.

Section 81-2705 sets forth the conduct that is prohibited under the Whistleblower Act. That section states in pertinent part that any person who has authority to take or effect personnel action shall not, with respect to such authority, take such personnel action against an employee because of the employee's disclosure of information, submission of allegations of wrongdoing, or providing of information or testimony to the Ombudsman or other official. The term "personnel action" is defined broadly in § 81-2703(4) to encompass virtually any action in the workplace which might adversely affect the employee.

Sections 81-2706 and 81-2707(1) are challenged by the NEOC. Section 81-2706(1) states that "[t]he [Ombudsman] shall receive any allegation of a violation of section 81-2705 and investigate to determine whether there are reasonable grounds to believe that a violation has occurred or is about to occur." Section 81-2706(4) then goes on to provide in pertinent part that if the Ombudsman finds there are reasonable grounds to believe that a violation of § 81-2705 has occurred, he or she shall transmit his or her findings in writing to the Governor and to the State Personnel Board. Finally, § 81-2707(1) states in pertinent part:

> Upon receiving the [Ombudsman's] finding that there is reason to believe a violation of section 81-2705 has occurred or is about to occur, the State Personnel Board . . . *shall*, without further proceedings, stay or reverse the personnel action until a hearing can be held to determine

if there is reason to believe that a violation of section 81-2705 is contemplated or has occurred. Such board . . . shall, at the earliest possible date, hold a hearing to determine whether a violation has occurred or is about to occur.

(Emphasis supplied.)

### (b) Whether Removal of Executive Employees Is Duty and Prerogative of Executive Branch of State Government

The NEOC asserts that § 81-2707(1) is violative of Neb. Const. art. II, § 1, which provides:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise *any* power properly belonging to either of the others, except as hereinafter expressly directed or permitted.

(Emphasis supplied.)

In other words, the Nebraska Constitution prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995); *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994). This aspect of the separation of powers clause serves as the beam from which our system of checks and balances is suspended. *State ex rel. Spire v. Conway*, 238 Neb. 766, 472 N.W.2d 403 (1991).

Article IV, § 1, of the Nebraska Constitution states in pertinent part:

The heads of all executive departments established by law, other than those to be elected as provided herein, shall be appointed by the Governor, with the consent of a majority of all members elected to the Legislature, but officers so appointed may be removed by the Governor. Subject to the provisions of this Constitution, the heads of the various executive or civil departments shall have power to appoint and remove all subordinate employees in their respective departments.

Article IV, § 10, of the Nebraska Constitution states in pertinent part:

> The Governor shall have power to remove, for cause and after a public hearing, any person whom he may appoint for a term except officers provided for in Article V of the Constitution . . . . The Governor shall have power to remove any other person whom he appoints at any time and for any reason.

In *State ex rel. Beck v. Young*, 154 Neb. 588, 591, 48 N.W.2d 677, 679 (1951), this court held:

> Except as limited by the Constitution itself the supreme executive power is to be exercised by the Governor and, under the division of powers devised by the Constitution, neither the Legislature nor the courts may exercise the powers thus conferred upon the executive branch. *The power to remove an officer or employee in the executive branch of the government is an executive function.*

(Emphasis supplied.)

The *Beck* court then went on to restate that "[t]he power of appointment and removal is in the Governor . . . and the legislative or judicial branches may not properly trench upon the executive power thus granted." *Id.* at 594, 48 N.W.2d at 681 (citing *Myers v. United States*, 272 U.S. 52, 47 S. Ct. 21, 71 L. Ed. 160 (1926)). Thus, it is clear that the power to remove an employee in the executive branch of state government is an executive duty and prerogative.

### (c) Whether Ombudsman Is Officer of Legislative Branch of State Government

The NEOC asserts that § 81-2707(1) calls for an officer of the Legislature to encroach upon the executive branch's duty and prerogative to remove executive employees. The crux of the NEOC's separation of powers argument is premised on the claim that the Ombudsman is an officer of the legislative branch of state government. This claim is not disputed by the appellees and is supported by state statutory law.

The Ombudsman is nominated and appointed, his or her salary is set, and he or she may be removed, by the Legislature. See Neb. Rev. Stat. §§ 81-8,241 and 81-8,243 (Reissue 1994). Furthermore, the Ombudsman reports to the Legislature and exercises the authority and performs the duties provided by the

Legislature. See § 81-8,241; Neb. Rev. Stat. § 81-8,251 (Reissue 1994). As such, we conclude that the Ombudsman is an officer of the legislative branch of state government.

### (d) Whether "Shall" as Used in § 81-2707(1) Should Be Construed as Mandatory or Discretionary

The NEOC argues that encroachment occurs because § 81-2707(1) mandates, through the use of the word "shall," that the State Personnel Board either temporarily stay or reverse the personnel action taken against an employee based upon the Ombudsman's finding of reasonable grounds to believe that a violation of the Whistleblower Act has occurred. Conversely, the appellees argue that the word "shall" as used in § 81-2707(1) should not be construed as mandatory and, thus, that that subsection does not call for encroachment upon the executive branch's duties and prerogatives.

### (i) General Rule That "Shall" Considered Mandatory

Neb. Rev. Stat. § 49-802 (Reissue 1993) states in pertinent part that

> [u]nless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter enacted shall be as follows:
>
> (1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed.

See, also, *Bank of Gering v. Glover,* 192 Neb. 575, 223 N.W.2d 56 (1974); *Anderson v. Carlson,* 171 Neb. 741, 107 N.W.2d 535 (1961).

In other words, the general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *Payne v. Nebraska Dept. of Corr. Servs.,* 249 Neb. 150, 542 N.W.2d 694 (1996). It is particularly so considered when the statute is addressed to public officials. *State ex rel. Smith v. Nebraska Liquor Control Commission,* 152 Neb. 676, 42 N.W.2d 297 (1950); *Trobough v. State,* 120 Neb. 453, 233 N.W. 452 (1930).

### (ii) Spirit and Purpose of Whistleblower Act Do Not Require "Shall" To Be Construed as Permissive Rather Than Mandatory

While the word "shall" may render a particular provision of a statute as mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

It is clear that the spirit and purpose of the Whistleblower Act were to ensure that an allegedly aggrieved state employee could bring his or her complaint to the Ombudsman and, if the Ombudsman finds reasonable grounds to believe the complaint has merit, that the employee "shall" receive an immediate stay or reversal from the personnel action taken against him or her and a prompt evidentiary hearing. However, if the State Personnel Board is free to disregard the Ombudsman's reasonable-grounds finding and to not order an immediate stay or reversal and an evidentiary hearing, then the legislative intent has been undermined.

A further indication that the Legislature intended the word "shall" to be mandatory is the additional language in § 81-2707(1) which provides:

> Upon receiving the [Ombudsman's] finding that there is reason to believe a violation of section 81-2705 has occurred or is about to occur, the State Personnel Board . . . *shall*, without further proceedings, stay or reverse the personnel action until a hearing can be held to determine if there is reason to believe that a violation of section 81-2705 is contemplated or has occurred.

(Emphasis supplied.)

In other words, the statute proscribes the State Personnel Board from conducting further proceedings before it issues the order of stay or reversal. If the word "shall" was merely intended to be a recommendation to the State Personnel Board, then the board would be unable to make a rational, independent decision, since it is proscribed from hearing argument and receiving evidence before making its decision. Thus, by proscribing further proceedings, the Legislature has made clear its intent to require the State Personnel Board to issue orders of

stay or reversal based on nothing more than the Ombudsman's finding of reasonable grounds.

Furthermore, the word "shall" appears 36 times in the Whistleblower Act. A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears. *Anderson v. Carlson, supra.* If the word "shall" in § 81-2707(1) means "may," then what meaning are we to give "shall" the other 35 times it appears in the Whistleblower Act? Moreover, through its use of the word "may" nine times in close proximity to the word "shall," it is clear that the Legislature understands the distinction between these words and intended each to mean what it says.

Thus, upon reviewing the statutory language and context of the Whistleblower Act, we are not persuaded that the spirit and purpose of the legislation require us to depart from the general rule and construe the word "shall" in § 81-2707(1) as permissive rather than mandatory.

### (iii) Case Distinguishable From Those in Which This Court Has Construed "Shall" as Permissive Rather Than Mandatory

Only three times has this court construed the word "shall" to be permissive in order to save a statute from constitutional infirmity. In *Nebraska Loan & Building Ass'n v. Perkins*, 61 Neb. 254, 85 N.W. 67 (1901), this court construed as permissive a portion of a legislative act of 1873 which stated in pertinent part that although the dues, fines, premiums, and other charges paid by members of a building and loan association may aggregate a greater amount than the legal rate of interest on loans made to them, such payments shall not be construed to make such transactions usurious. The court reasoned:

> It is not within the province of the legislature to interpret the law, or to apply it to particular cases, that being peculiarly the duty of the courts. But we do not think that the legislature, in reciting that the contracts of these associations should not be construed to be usurious, intended to usurp judicial functions. While the wording of the statute would bear the construction that it was a direction to the courts, yet the substance of the legislation must be

regarded, rather than the form, and for that reason we are of opinion that it was rather the intention of the legislature to establish a rule of interest relative to this particular class of contracts; that the act is declaratory, the intent thereby being to relieve the contracts of these institutions from the operation of the usury laws, rather than an attempt to arrogate to the legislature judicial functions.

*Id.* at 261, 85 N.W. at 69.

In *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. 109, 242 N.W. 278 (1932), we held that a legislative act providing that the secretary of the department of trade and commerce shall be the sole receiver of all insolvent state banks amounts to no more, in a judicial proceeding properly pending in a court of equity for the liquidation of a bank, than a legislative recommendation to the judiciary to appoint him, as otherwise the enactment would be an unconstitutional encroachment on judicial power. The court reasoned:

French legislators once imprisoned judges for failure to comply with the legislative will. Montesquieu suggested a government with legislative, executive and judicial departments, each independent of the other. The framers of the American Constitution and the people of Nebraska adopted that plan. It has been regarded by statesmen and philosophers as an outstanding advancement in the science of government. Throughout the judicial history of the present system the courts have scrupulously respected the prerogatives of the legislative and executive departments and extended to them the comity due to governmental divisions of equal rank, *but courtesy does not extend to the surrendering of judicial power. It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution.*

(Emphasis supplied.) *Id.* at 114, 242 N.W. at 280-81.

In *State ex rel. Grape v. Zach*, 247 Neb. 29, 37, 524 N.W.2d 788, 797 (1994), this court was faced with construing a statute which read, " 'If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed

jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending . . . .' "

The court held that the word "shall" was directory, stating that "if the portions of [the statutes] at issue merely recommend that a judge engage in certain communications rather than command that the judge do so, that is, if the provisions are directory rather than mandatory, they will survive constitutional scrutiny." *Id.* at 42, 524 N.W.2d at 799-800. The court reasoned:

> The due process and ethical problems which arise when judges turn into inquisitors by undertaking to personally investigate the facts in matters they must adjudicate illustrate one of the reasons *the distribution of powers clause contained in Neb. Const. art. II, § 1, prohibits the legislative department of government from telling the judicial department of government how to conduct judicial business.*

(Emphasis supplied.) *Id.* at 41-42, 524 N.W.2d at 799 (citing *State, ex rel. Sorensen, v. State Bank of Minatare, supra*).

Thus, this court has construed the word "shall" to be directory, in order to save the constitutionality of a statute only in cases where the Legislature has attempted to encroach upon the judiciary's duties and prerogatives by telling the judiciary how to conduct its judicial business.

In *Anderson v. Carlson*, 171 Neb. 741, 107 N.W.2d 535 (1961), this court held that a statute permitting private taxation without affording property owners the opportunity to be heard by a competent tribunal upon the question of whether the property has been arbitrarily or unjustly included within the boundaries of the proposed district is an unconstitutional delegation of legislative power. In that case the court stated:

> In order to suggest a question on construction, appellants urge that the word "shall" be interpreted as permissive in order to uphold a legislative act. With this we do not agree. It is not the function of the courts to legislate. There may be occasions where it is apparent the word "shall" may have been used by inadvertence, and the rest of the act so indicates, in which case appellants' argument would have merit. However, that is not the case here. . . .
> . . . .

. . . To so hold would be judicial legislation in which we do not intend to indulge.

*Id.* at 745-46, 107 N.W.2d at 538-39.

The instant case is distinguishable from *Nebraska Loan & Building Ass'n v. Perkins*, 61 Neb. 254, 85 N.W. 67 (1901); *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. 109, 242 N.W. 278 (1932); and *State ex rel. Grape v. Zach, supra*, in that in the instant case the Legislature's encroachment is upon the executive branch, not the judiciary. The judiciary, not the executive branch, serves as a check upon the constitutionality of legislative enactments. As such, the judiciary is permitted to construe legislative enactments in a manner that eliminates legislative attempts to usurp judicial power. As stated, "It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution." *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. at 114, 242 N.W. at 281. See, also, *State ex rel. Grape v. Zach, supra*.

For the foregoing reasons, we refuse to give the word "shall," as it appears in § 81-2707(1), a permissive construction and instead apply the general rule that the word "shall" is mandatory and inconsistent with the idea of discretion.

### (e) Whether § 81-2707(1) Calls for Legislative Branch to Encroach Upon Executive Branch's Duties and Prerogatives

The appellees assert that § 81-2707(1) is not violative of the separation of powers clause, because the State Personnel Board's actions are not taken because of any order or directive of the Ombudsman, but instead are taken pursuant to the directive of § 81-2707(1). However, this argument places form over substance and is without merit, because it is the Legislature that empowers the Ombudsman with the authority to force a stay or reversal of the firing decision in the first place.

The appellees further assert that even if the word "shall" in § 81-2707(1) is construed as mandatory, that section does not impermissibly permit the legislative branch to encroach upon the executive branch's duties and prerogatives. They argue that although the Ombudsman's findings must temporarily be fol-

lowed, ultimately a hearing before the State Personnel Board is held, and thus, the final decisionmaking power as to whether or not to reinstate the employee is in the hands of the State Personnel Board, which is part of the executive branch of state government. See Neb. Rev. Stat. §§ 81-1318, 81-1318.01, and 81-1316 (Reissue 1994). Thus, it is claimed that the Ombudsman exercises no control over, but merely has a permissible effect upon, the State Personnel Board because once the Ombudsman submits his or her findings, his or her involvement in the matter has ended.

The appellees are correct in their assertion that under the Whistleblower Act the ultimate authority to determine whether an executive employee was fired in violation of the Act is vested in the State Personnel Board. However, we determine that § 81-2707(1)'s requirement that the Ombudsman's finding be followed, albeit temporarily, impermissibly calls for the legislative branch to encroach upon the executive branch's duties and prerogatives. See, Neb. Const. art. IV, § 1; Neb. Const. art. IV, § 10; *State ex rel. Beck v. Young*, 154 Neb. 588, 48 N.W.2d 677 (1951).

"In accordance with constitutional provisions separating the departments of government, the legislature cannot interfere with, or exercise *any* powers properly belonging to, the executive department." (Emphasis supplied.) 16 C.J.S. *Constitutional Law* § 134 at 434 (1984). See, also, *State ex rel. Meyer v. State Board of Equalization & Assessment*, 185 Neb. 490, 176 N.W.2d 920 (1970); *State ex rel. Beck v. Young, supra.* "Thus, the legislature cannot relieve or preclude any executive officer from the performance of a duty enjoined on him by the constitution . . . ." 16 C.J.S., *supra*, at 434. "The legislature can neither enforce the laws which it has the power to make, nor, in the usual instance, appoint the agents charged with the duty of such enforcement." 16 Am. Jur. 2d *Constitutional Law* § 323 at 858 (1979). "The two departments should be kept as distinct and independent as possible." *Id.* at 857.

In short, § 81-2707(1) places the legislative branch in a position to dictate to the executive branch how the latter will treat certain executive branch employees until an evidentiary hearing is held. Thus, the Legislature not only is empowered to declare

what the law is, but, through § 81-2707(1), attempts to reserve to itself the power and authority to administer and enforce the law as well. This we determine is impermissible under the Nebraska Constitution.

## V. CONCLUSION

We conclude that § 81-2707(1) of the State Government Effectiveness Act is unconstitutional, in violation of the separation of powers clause of Neb. Const. art. II, § 1. As a result, we reverse the district court's orders issuing peremptory writs of mandamus.

REVERSED.

FAHRNBRUCH, J., not participating.

WRIGHT, J., dissenting.

I dissent because I cannot conclude that Neb. Rev. Stat. § 81-2707(1) (Reissue 1994) is unconstitutional. In my opinion, § 81-2707(1) does not violate the separation of powers clause of Neb. Const. art. II, § 1, which prohibits one branch of government from exercising the duties and powers "properly belonging to either of the others." Rather, it is my opinion that § 81-2707(1) merely tells the State Personnel Board (executive branch) how to proceed in order to effectively carry out a law properly enacted by the Legislature. Such procedural constraints imposed by the legislative branch do not intrude upon the central prerogatives of the executive branch such that the Legislature can be said to be exercising a "power properly belonging" to the executive branch. See *Loving v. U.S.*, ___ U.S. ___, 116 S. Ct. 1737, 135 L. Ed. 2d 36 (1996).

The legislative power is set forth in article III of the Nebraska Constitution. The executive power is set forth in article IV. The judicial power is set forth in article V. The personnel board is a body created specifically by legislative enactment. See Neb. Rev. Stat. § 81-1318 (Reissue 1994). The manner in which the personnel board is to operate is not controlled by the Public Counsel (also known as the Ombudsman), nor is the power of the personnel board exercised by the Public Counsel.

The Legislature enacted the State Government Effectiveness Act, Neb. Rev. Stat. §§ 81-2701 through 81-2710 (Reissue 1994 & Cum. Supp. 1996), as a means to ensure that the government

operates in accordance with the law, by protecting public employees who disclose possible illegalities or improprieties. See § 81-2702. The act requires that the Public Counsel (legislative branch) first make an investigation into charges of any possible violation. The Public Counsel then makes a determination as to whether reasonable grounds exist to believe the act has been violated. See § 81-2706.

If the Public Counsel finds reasonable grounds to believe a violation has occurred, a report is forwarded to the personnel board (executive branch), which is then required to hold a hearing to determine whether there has been a statutory violation. Until the personnel board carries out the hearing, however, it is required to stay the action. The personnel board's determination is subject to review by the district court (judicial branch). See § 81-2707(3).

In my opinion, the required stay is basic procedural due process, which the Legislature may establish in order to effectively carry out a law that was within the Legislature's power to enact to protect the public welfare.

It is obvious that the Nebraska Constitution, like the federal Constitution, " 'contemplates that practice will integrate the dispersed powers into a workable government. . . .' " *Loving*, 116 S. Ct. at 1743 (quoting *Youngstown Co. v. Sawyer*, 343 U.S. 579, 72 S. Ct. 863, 96 L. Ed. 1153 (1952) (Jackson, J., concurring)). See, also, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995) (state court decisions in period immediately after ratification of federal Constitution drew little distinction between federal and state Constitutions in their understanding of separation of powers). Separation of powers " ' "d[oes] not mean that these [three] departments ought to have no partial agency in, or no controul [sic] over the acts of each other." ' " *Loving*, 116 S. Ct. at 1743 (quoting *Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)). A " 'hermetic sealing off of the three branches of Government from one another would preclude the establishment of a Nation capable of governing itself effectively.' " *Loving*, 116 S. Ct. at 1743 (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)).

In my opinion, § 81-2707(1) does not create a legislative exercise of power properly belonging to either the executive or the judicial branch. Instead, § 81-2707(1) is merely an example of the necessary integration of those powers.

LANPHIER, J., joins in this dissent.