RALPH NAVARETTE, APPELLEE AND CROSS-APPELLANT,
V. DEAN SETTLE, DIRECTOR OF THE COMMUNITY MENTAL
HEALTH CENTER OF LANCASTER COUNTY, AND KIM ETHERTON,
PROGRAM SUPERVISOR OF THE CRISIS CENTER, COMMUNITY
MENTAL HEALTH CENTER OF LANCASTER COUNTY,
APPELLANTS AND CROSS-APPELLEES.

633 N.W.2d 588

Filed August 28, 2001.   No. A-00-436.

Gary E. Lacey, Lancaster County Attorney, and Michael E. Thew for appellants.

Dennis R. Keefe, Lancaster County Public Defender, and Dorothy A. Walker for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Dean Settle, director of the Community Mental Health Center of Lancaster County, and Kim Etherton, program supervisor of the Crisis Center, Community Mental Health Center of Lancaster County, hereinafter referred to collectively as the "Appellants," appeal from an order of the district court in this habeas corpus proceeding brought by Ralph Navarette. On appeal, the Appellants challenge the district court's refusal to dismiss the case as moot, as well as the court's finding that habeas corpus was an appropriate avenue for Navarette's claim that he was being unlawfully held without receiving prompt and adequate mental health treatment. Navarette has filed a cross-appeal challenging the district court's refusal to define the term "prompt treatment" as used in the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. § 83-1001 et seq. (Reissue 1999), to mean treatment within 24 hours of involuntary civil commitment. Because we find the district court erred in not dismissing the case as moot, we reverse, and remand the matter with directions to dismiss Navarette's habeas corpus petition.

## II. BACKGROUND

On September 23, 1994, Navarette pled guilty and was convicted of first degree sexual assault on a child. Navarette was sentenced to 5 to 10 years' imprisonment. On September 30, 1999, the State filed a petition before the Douglas County Mental Health Board seeking a hearing to determine whether Navarette is a mentally ill dangerous person and what treatment alternative would suffice to prevent the occurrence of harm to others upon his release from the Omaha Correctional Center where he was apparently serving his sentence. Venue was transferred to the Lancaster County Mental Health Board.

On October 28, 1999, a hearing was conducted before the Lancaster County Mental Health Board. The State presented the testimony of two clinical psychologists, Drs. Nancy G. Mize and

Gerald K. Shannon. They testified that Navarette suffers from the mental illness of pedophilia and that as a result, he represents a danger of harm to others. Dr. Mize testified that in her opinion, Navarette presented "an extremely high risk to reoffend." Both psychologists further testified that they would recommend inpatient treatment for Navarette and that less restrictive alternatives would not be sufficient in this case.

On November 1, 1999, the Lancaster County Mental Health Board, upon consideration of the evidence presented at the hearing, determined in a supplemental order of commitment that there was clear and convincing evidence that Navarette is a mentally ill dangerous person and, as a result, presents a substantial risk of serious harm to others within the near future. The board further found that there was clear and convincing evidence that no less restrictive treatment alternatives were available to prevent the potential harm. Therefore, the board ordered Navarette to be committed on an inpatient basis to the Nebraska Department of Health and Human Services for individualized treatment.

Navarette was initially committed to the Lancaster County Community Mental Health Center (Crisis Center) on October 28, 1999. The Crisis Center is not a facility that provides treatment for patients. Navarette was initially committed to the Crisis Center because the Lincoln Regional Center did not have any available bedspace in its treatment program when he was committed. Navarette remained at the Crisis Center, without any treatment, until January 12, 2000.

On January 4, 2000, Navarette filed a petition for habeas corpus relief in the district court. Navarette alleged in his petition that he had a statutory right to prompt and adequate treatment pursuant to § 83-1066. He alleged that he had been detained at the Crisis Center without any treatment since October 28, 1999, and that such detainment without treatment violated his due process rights. Additionally, Navarette alleged that § 83-1066 specifically provided him the right to file an application for habeas corpus relief to challenge the legality of his treatment. Navarette asserted that he was being unlawfully detained and that he was entitled to be released.

In mid-December 1999, the Lincoln Regional Center notified the Crisis Center that it would have a bed available for Navarette

on January 5, 2000. The date was subsequently changed to January 12. On January 12, Navarette was discharged from the Crisis Center and admitted to the Lincoln Regional Center.

On February 3, 2000, the Appellants filed a response to Navarette's petition for habeas corpus relief in the district court asserting that the matter had become moot because Navarette was no longer in the custody of the Crisis Center and had been transferred on January 12. They further asserted that Navarette's petition did not state facts sufficient to constitute a cause of action for habeas corpus relief.

On February 4, 2000, the district court conducted a hearing on Navarette's petition for habeas corpus relief. Testimony was received concerning Navarette's detention at the Crisis Center, as well as testimony concerning the average length of detention at the Crisis Center pending available bedspace at a treatment facility. The court further received various exhibits, including the documentation concerning Navarette's commitment hearing before the Lancaster County Mental Health Board.

On March 23, 2000, the district court issued its order. The district court first addressed the mootness issue. The court recognized that cases are generally dismissed when there is no actual controversy existing at the time of trial, but further recognized that an exception to the general mootness rule exists "when the issues raised are a matter of public interest but, because of their transitory nature, will elude judicial review." The court found that the exception should be applied in this case.

The district court next addressed whether habeas corpus relief is an appropriate vehicle for Navarette to challenge his confinement at the Crisis Center without treatment. The court concluded that Navarette was entitled to file an application for habeas corpus relief pursuant to § 83-1066. The court further found that Navarette had demonstrated that his detention at the Crisis Center from October 28, 1999, until January 12, 2000, did violate his right to prompt and adequate treatment. The court declined to specifically define "prompt treatment," despite Navarette's assertion that such should be defined to mean treatment within 24 hours of commitment. In this regard, the court held: "I don't believe there is sufficient evidence for me to define 'prompt' in this case (other than to say it is something

less than eleven weeks), let alone conclude that prompt always means within 24 hours." The court specifically declined to grant Navarette any personal relief and held that because he was then at the Lincoln Regional Center and receiving treatment, his release would not be ordered.

## III. ASSIGNMENTS OF ERROR

On appeal, the Appellants have assigned four errors, which we consolidate for discussion to two. First, the Appellants assert that the district court erred in not dismissing the case as moot. Second, the Appellants assert that the district court erred in holding that habeas corpus proceedings were the proper avenue for Navarette to challenge his detention at the Crisis Center.

On cross-appeal, Navarette has assigned one error. Navarette asserts that the district court erred in not defining "prompt treatment" to mean treatment within 24 hours of commitment.

## IV. ANALYSIS

### 1. MOOTNESS

██ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State ex rel. Lamm v. Nebraska Bd. of Pardons*, 260 Neb. 1000, 620 N.W.2d 763 (2001); *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000). See, also, *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999); *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998). While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra*; *Greater Omaha Realty Co. v. City of Omaha, supra*.

██ A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of the litigation. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra*; *Greater Omaha Realty Co. v. City of Omaha, supra*; *Elstun v. Elstun, supra*; *State v. Woods, supra*; *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). A moot case is one which seeks to determine a question which does not rest

upon the existing facts or rights, in which the issues presented are no longer alive. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra; Greater Omaha Realty Co. v. City of Omaha, supra.* As a general rule, a moot case is subject to summary dismissal. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra; Greater Omaha Realty Co. v. City of Omaha, supra; Elstun v. Elstun, supra.*

The Appellants first assert that the district court erred in not dismissing the action as moot. They argue that the district court was without authority to apply the public interest exception to the mootness doctrine, that the exception should not be applied to the facts of this case, and that Navarette should not be allowed to benefit from the exception because the delay in bringing the action to court was caused by his own failure to file any proceedings at an earlier date.

The dispute concerns whether the district court properly applied a well-recognized exception to the mootness doctrine, the public interest exception.

The Nebraska Supreme Court has held that an appellate court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra; Hauser v. Hauser,* 259 Neb. 653, 611 N.W.2d 840 (2000); *Elstun v. Elstun, supra.* The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *State ex rel. Lamm v. Nebraska Bd. of Pardons, supra; Hauser v. Hauser, supra; Greater Omaha Realty Co. v. City of Omaha, supra; Elstun v. Elstun, supra; State v. Woods, supra; State ex rel. Shepherd v. Neb. Equal Opp. Comm., supra.* See, also, 5 Am. Jur. 2d *Appellate Review* § 648 (1995) (noting distinction between public interest exception and exception to mootness for cases capable of repetition yet evading review).

We are unable to find any authority for a trial court applying this exception to the mootness rule. However, we need not specifically decide whether a trial court may ever apply the

exception because, even to the extent such application might be proper, the present case does not present an appropriate situation for applying the exception.

The specific issue before the district court in the present case was whether Navarette's detention at the Crisis Center from October 28, 1999, through the first part of January 2000 without any treatment, while the Crisis Center was awaiting the availability of a bed at an appropriate treatment center, violated Navarette's right to "prompt and adequate" treatment. See § 83-1066(2). Although the issue arguably could concern a public interest, to the extent other committed individuals have similar rights to prompt and adequate treatment and might be detained in a similar fashion, resolving the issue in Navarette's case does not provide an authoritative decision on what constitutes prompt and adequate treatment.

The district court was presented with evidence concerning delays in the Crisis Center's being able to transfer committed individuals to treatment facilities. That evidence indicated that the delay was different for sex offenders from other committed individuals because treatment facilities do not mix populations of sex offenders with other committed individuals. The court received evidence that the length of delay, as well as the number of sex offenders in the system, varies from month to month and year to year. Additionally, the court received evidence that the number of sex offenders being committed for treatment is increasing and that the Nebraska Department of Health and Human Services is being forced to adjust its planning for future years to make additional accommodation.

It is apparent that the determination of what constitutes "prompt and adequate" treatment, as those terms are used in § 83-1066(2), will inherently be a factual determination to be made based on the evidence and circumstances presented in each particular case. The district court implicitly recognized this fact by holding that there was not sufficient evidence to define "prompt," except to conclude that the period of time Navarette had to be detained at the Crisis Center did not constitute prompt treatment. That fact, however, does not necessarily mean that there are no factual circumstances under which such a period of time could be considered, as a factual matter, to be prompt.

The determination of what constitutes "prompt" treatment is inherently a factual determination to be made of necessity on a case-by-case basis. Thus, a judicial determination concerning whether the facts of a given case demonstrate prompt treatment will not provide an authoritative decision which can be applied uniformly to the myriad of factual situations which may arise concerning mental health commitment proceedings. As the determination of "promptness" is unique in each particular case, an authoritative adjudication for future guidance does not result from this case. Thus, the public interest exception to the mootness doctrine should not be applied. See *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000). Therefore, we find that the district court erred in applying the exception to this particular case and that it should have dismissed the matter as moot.

### 2. REMAINING ISSUES

Because we conclude that this case should have been dismissed as moot, we decline to further address the issues raised by the Appellants on appeal or by Navarette on cross-appeal.

### V. CONCLUSION

Because the issues raised in Navarette's petition for habeas corpus relief were moot, the district court should have dismissed the matter. The public interest exception does not apply to allow a judicial determination of this case. Accordingly, we reverse, and remand the matter to the district court with directions to dismiss Navarette's petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.